UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT L. DYKES,

        Plaintiff,                      Case No. 1:14-cv-1167

v.                                       Honorable Gordon J. Quist

N. MARSHALL et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss for failure to state a claim Plaintiff's counts alleging violations of his rights to due process, access to the courts, and the Eighth Amendment. The Court will serve the complaint against Defendants on the counts of retaliation and equal protection.

**Discussion**

I.        Factual allegations

Plaintiff Robert L. Dykes presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI). He sues the following RMI employees: Classification Director N. Marshall; Correctional Officer S. Jones; and Food Service Supervisors (unknown) Meadows and D. North.

Plaintiff's complaint is not a model of clarity, as he initially alleges some of the facts supporting his claims and only later provides a chronology of facts that do not wholly parallel his earlier allegations. The Court has attempted to consolidate the allegations into a single sequence.

Plaintiff alleges that he was employed in a food service job at RMI for approximately ten months, during which time he received no misconduct tickets, no counseled warnings and no negative work reports. He alleges that, before Aramark took over food service delivery at RMI, the food-service department had an informal procedure to request termination of an employee who had been counseled three times for violating food service rules during a period of 30 days.

According to the complaint, Defendants conspired to issue counseled warnings against Plaintiff in order to terminate Plaintiff's employment. Plaintiff alleges that Defendant Jones touched Plaintiff's "private areas" during the course of seventeen pat-down searches, ostensibly in violation of MICH. DEP'T OF CORR., Policy Directive 03.03.140 ¶ D(2). (Compl., docket #1, Page ID##7, 13.) Plaintiff subsequently defines his private areas as his "[b]uttocks, phallus, genit[]als, and inner thighs." (*Id.*, Page ID#12.) Plaintiff also alleges that Defendant Meadows subjected him to discriminatory harassment for not participating in food service conversations, ostensibly in violation of MICH. DEP'T OF CORR., Policy Directive 03.03.130. On April 21, 2014, he informed

both Defendant Jones and Defendant Meadows that he was filing the grievances against them for the conduct, and he subsequently filed the grievances.

On April 27, 2014, Defendant Meadows ordered Plaintiff to wash the walls in the pots-and-pans area. Meadows later came up to Plaintiff and asked if he had washed the walls. Plaintiff told Meadows he had, and Meadows, after consulting with Jones, told Plaintiff, "I got you, this is your last day." (Compl., Page ID#10.) Meadows wrote a Class III misconduct ticket against Petitioner for Lying to an Employee, together with a Lay-in Notice and a work report that requested Plaintiff's termination from his position. Plaintiff objected, telling other staff that the camera footage would reveal that Plaintiff had not lied and that he had washed the walls as directed. Upon review of the camera footage, the misconduct ticket was found to be unsubstantiated. Plaintiff filed a grievance against Meadows, who left his job a few days later.

Plaintiff observed Defendant North take a cookie from a cookie sheet and eat it while supervising the food line on May 12, 2014. Plaintiff told supervisor Karr about North's conduct. Plaintiff then informed North that he would be filing a grievance against him for "unsanitary practices." (*Id.*, Page ID#14.) North responded, "I don't care. Hey Dykes. Just spell my name right." (*Id.*) Plaintiff contends that the comment referenced Plaintiff's having mis-spelled Meadows' name on a prior grievance, and it indicated that Defendants were laughing at Plaintiff and conspiring with one another.

Later that day, Plaintiff gave prisoner Robinson a note to deliver to prisoner Johnson. Defendant Jones found the note during a patdown search, and Defendant North asked Plaintiff what it was. Plaintiff explained that it was "a note to Johnson trying to get the coffees he said he would give for a letter I wrote for him[.]" (*Id.*) North issued Plaintiff a counseled warning, "because there is no passing of anything while on your assignment." (*Id.*) Food-service employee Corter was

standing nearby. She told Plaintiff that, "because you weren't caught trying to get the items you haven't violated any rules, consider this your warning, because there is no passing of anything while on your assignment." (*Id.*) Plaintiff states that no rule prohibited the passing of notes, and North's write-up was merely another attempt to have Plaintiff fired from his job. The following day, Plaintiff was informed that he was being laid-in from work, and he was handed a notice on which North had claimed, as follows:

> A)  Prisoner Dykes #201541 was counseled by C/O S. Jones in the month of April about doing legal work while on assignment. . . .
>
> B)  Dykes-Bey wrote a note for prisoner Robinson #858448 to pass to prisoner Johnson #791359 while on assignment. . . .
>
> C)  This is prisoner Dyke's 3rd write-up within 30 days. . . .
>
> D)  Prisoner admits in the letter he was charging prisoner Johnson 791359 for legal work he completed and sent to the prosecutor. There are no (CSJ-337) Legal Assistance Agreements that allow for compensation for another prisoner[']s assistance[.] . . .

(*Id.*, Page ID#15.) Plaintiff disputes the reasons given for the counseled warnings. He contends that the first warning was for being argumentative about the rules, not for doing legal work on the job, and he insists that, because there was no rule infraction, Jones was retaliating against him. He also asserts that writing a note to Robinson did not violate a rule. Further, he contends that the note does not suggest to a prudent person that he did any legal work for Johnson, and he claims that Johnson offered to pay him to write a letter to the prosecutor for him.[1] Plaintiff filed a grievance against Defendant North on May 13, 2014.

---

[1] Plaintiff regularly refers to exhibits attached to his complaint, but the Court has not received exhibits from Plaintiff.

On June 2, 2014, Defendant Marshall conducted a hearing on Defendant North's request to reclassify Plaintiff. At the hearing, in an effort to prove that the request for reclassification was retaliatory, Plaintiff attempted to provide Marshall with copies of the grievances he had filed against Defendants Jones, Meadows, and North, as well as copies of the kitchen rules and the institutional policies. Defendant Marshall told Plaintiff that she did not need to see his copies, as she was "fully aware of them and aware of the conflict [Plaintiff] was having with staff, [] which is over, because I'm terminating you from you[r] job." (*Id.*, Page ID#16.) Marshall told Plaintiff that he would not work again in food service as long as he was housed at RMI and that she was placing him on "unemployable" status.[2] (*Id.*)

Plaintiff filed a grievance against Defendant Marshall the next day, contending that Marshall was assisting the other Defendants in having Plaintiff terminated from his job assignment without due process. He states that Marshall fabricated the reclassification report by asserting that Plaintiff had been terminated because he had received a misconduct ticket for being out of place, despite the fact that Plaintiff had been misconduct-free for more than a year. When Assistant Resident Unit Supervisor (ARUS) Rogers investigated the grievance, Marshall told Rogers that she had terminated Plaintiff because of the counseled warnings Plaintiff had been issued by the other Defendants. Plaintiff contends that the changing reasons given for the termination, together with the absence of a legitimate reason for the termination, demonstrate that Defendant Marshall acted

---

[2] Under MDOC Policy Directive 05.02.110 ¶ A, all prisoners must be assigned to work and/or school, unless they are classified as "unemployable" under Policy Directive 05.01.100 ¶ X. Unless that status is assigned because of a medical restriction or placement in segregation, the prisoner is not permitted to participate in more leisure time than those who work full time. MICH. DEP'T OF CORR., Policy Directive 05.01.100 ¶ Z. A prisoner's unemployable status is reconsidered for reclassification every 30 calendar days. *Id.* ¶ AA. Moreover, a prisoner who has been "terminated from a work or school assignment for unsatisfactory performance, or as the result of being found guilty of misconduct, within the 12 months preceding application for indigent status" is not eligible for indigent status. MICH. DEP'T OF CORR., Policy Directive 04.02.120 ¶ B(4).

as part of a conspiracy to retaliate against Plaintiff. He also alleges that his unwarranted placement on unemployable status was both unsupported and retaliatory. He argues that under MDOC Policy Directive 05.01.100, he should be eligible for a new job after 30 days. On July 15, 2014, ARUS Rogers sought reclassification for Plaintiff, and she identified three job pools for placement. Defendant Marshall allegedly refused to process the request for reclassification and, on August 8, 2014, merely marked the form "Review" instead of "Reclassification," which had the effect of keeping Plaintiff on unemployable status for an additional 30 days. ARUS Rogers submitted another reclassification request for Plaintiff on August 20, 2014, after finding that the computer showed the reason given for the reclassification, a misconduct ticket, was not correct. Defendant Marshall again merely marked the request as "Review" and refused to reclassify Plaintiff. Plaintiff argues that the treatment of white prisoners Hill, Moore, Fox, Duranso and Eagle, who were terminated from food service following misconducts but not placed on unemployable status, demonstrates that Defendant Marshall's treatment of Plaintiff violated the Equal Protection Clause and was retaliatory. Plaintiff also contends that Defendant Marshall's conduct violated his right to access the courts, because he will be unable to file a state-court lawsuit until he pays a minimum of $375.00, and he currently owes $2,030.00 to the courts. Plaintiff argues that he has two pending suits, one of which is at the trial stage and the other of which is in the Sixth Circuit.[3]

        In sum, Plaintiff alleges that Defendants conspired to violate and violated his First Amendment rights by retaliating against him for filing grievances; denying him due process; denying him access to the courts; denying his right to equal protection; and violating his Eighth

---

[3] Plaintiff apparently is referring to *Dykes v. Winn*, No. 2:13-cv-13813 (E.D. Mich.), which remains pending in the Eastern District of Michigan, and *Dykes v. McRoberts*, Case No. 14-1766 (6th Cir.), *on appeal from* No. 5:13-cv-13812 (E.D. Mich) (Op. & Order of Dismissal Dec. 19, 2013).

Amendment right to be free from pat-down searches that touch his pubic area. For relief, Plaintiff seeks compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff argues that Defendants deprived him of his right to due process by issuing him false employment warnings, discharging him from his food service job, and placing him on unemployable status, all in violation of MDOC policy directives.

"Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, the Sixth Circuit consistently has found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*,

888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730, at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment and placement on unemployable status.

**B.     Access to the Courts**

Plaintiff contends that Defendant Marshall violated his First Amendment right to access the courts by terminating him from his food-service job and refusing to reclassify him to another position. He alleges that he owes the courts $2,030.00 in fees and costs. In addition, he contends that he will not be allowed to file a new state-court action until he pays at least $375.00. He also asserts that he has pending cases in the federal trial and appellate courts. As a consequence of his unemployable status, he argues, he is deprived of both income and indigent status, which he contends will affect his ability to litigate his pending cases and file new ones.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.*

at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must

describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Although Plaintiff broadly alleges that his ability to litigate his cases will be affected by his inability to pay for his copies, paper, pens, envelopes and notarial services, he fails to identify an actual injury. A review of the public docket sheets of his cases pending in the Sixth Circuit indicates that he has suffered no such injury. Indeed, between July 24, 2014 and December 2, 2014, he filed a brief, two motions, correspondence, a financial affidavit, and an amended notice of appeal. *See Dykes-Bey v. McRoberts*, No. 14-1766 (6th Cir.) (docket ##6-10). Although Plaintiff filed a second appeal in that case that was dismissed, the case was not dismissed for any failure to litigate by Plaintiff; it was dismissed as duplicative of Case No. 14-1777. *See Dykes-Bey v. McRoberts*, No. 14-1977 (6th Cir. Dec. 2, 2014).

Further, with respect to his case pending in the Eastern District of Michigan, between August 7, 2014 and October 6, 2014, Plaintiff filed a motion for summary judgment, a motion for default judgment, an objection to Defendants' response to the motion for summary judgment, and a reply to Defendants' response to the motion for default judgment. Both motions remain pending at this time, and no filing is owed by Plaintiff. *See Dykes v. Winn*, No. 2:13-cv-13813 (E.D. Mich.) (docket ##38, 41-44). Moreover, Plaintiff makes no allegations concerning his need and inability to file any matter in the state courts.

In sum, not only has Plaintiff failed to allege actual injury, but also his allegations of harm are wholly contrary to the public record. He therefore fails to state an access-to-the-courts claim.

### C. Improper Touching

Plaintiff contends that Defendant Jones impermissibly touched Plaintiff's private areas (his buttocks, phallus, genitals, and inner thighs) on 17 occasions, while conducting clothed, pat-down searches of Plaintiff. Plaintiff contends that Jones' conduct violated MDOC Policy Directive 03.03.140 ¶ D(2), which prohibits any touching of the groin area for any reason. He also appears to allege that Jones' touching of his groin area during the pat-down searches violates Plaintiff's Eighth Amendment rights.

As previously discussed, a defendant's failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney*, 501 F.3d at 581 n.2; *Brody*, 250 F.3d at 437; *Smith*, 954 F.2d at 347-48 (6th Cir. 1992); *Barber*, 953 F.2d at 240. Plaintiff therefore fails to state a § 1983 claim based on any violation of MDOC rules.[4]

Plaintiff's claim that Defendant Jones' pat-down searches violated the Eighth Amendment must be analyzed under the Supreme Court authority limiting the use of force against prisoners. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton

---

[4] The Court also notes that MDOC Policy Directive 03.03.140 ¶ D(2) bars the "intentional touching of a prisoner's genitals, anus, groin, breast, inner thigh, or buttocks *with the intent to abuse, arouse, or gratify the sexual desire of any person. Id.* (emphasis added). Plaintiff does not allege that Defendant Jones touched him with any of the described intents, nor does he allege facts that would support the existence of such intent. Instead, Plaintiff specifically alleges that Jones touched him in his groin area during the course of routine pat-down searches. As a result, even if the policy claim were cognizable under § 1983, Plaintiff fails to allege facts that would demonstrate a violation of policy.

infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986) should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178-79 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 130 S. Ct. at 1178. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley*, 475 U.S. at 321-22.

In the instant case, Plaintiff alleges no more than that, during the course of routine, clothed, pat-down searches, Jones touched Plaintiff's private areas. He makes no allegation that any pat-down search was itself improper or that Jones lingered, fondled, or in any manner suggested an intent to humiliate Plaintiff or to derive sexual pleasure from the incident. *See Washington v. Hively*, 695 F.3d 641, 643-44 (7th Cir. 2012) (distinguishing between the plaintiff's allegations that

a guard spent five to seven seconds gratuitously fondling a prisoner's nude genitals and a proper incident of a pat-down search, only the first of which would constitute an Eighth Amendment claim); *Murray v. U.S. Bureau of Prisons*, No. 95-9204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (recognizing the need for allegations of an improper search). Instead, Plaintiff's allegations are that he should not have had to undergo full pat-down searches.

Plaintiff's allegations fail to state an Eighth Amendment claim. The penological justification for conducting pat-down searches of prisoners who work in the kitchen is apparent. *See Soloman v. Michigan Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (concluding that a pat-down search that touches the groin area is warranted after a prisoner completes his work detail in the kitchen); *cf. Florence v. Bd. of Chosen Feeholders*, 132 S. Ct. 1510, 1517 (2012) (recognizing that correctional officials must be permitted to devise reasonable searches to detect the possession of contraband, even strip searches of prisoners charged with minor offenses). The clothed, pat-down searches alleged by Plaintiff fail entirely to support a claim that Jones used force that was wanton or malicious. *Id.* (rejecting Eighth Amendment claim based on pat-down searches that touched the groin area, even when coupled with sexually suggestive remarks); *see also Tuttle v. Carroll Cnty. Detention Ctr.*, 500 App'x 480, 481–482 (6th Cir. 2010) (affirming the dismissal of an Eighth Amendment claim where the plaintiff alleged that a female prison guard "grabbed [his] privates and squeezed them really hard") (emphasis omitted); *Brown v. Withrow*, No. 92-1765, 1993 WL 15141, at *1 (6th Cir. Jan. 22, 1993) ("A pat-down search, which is by definition of short duration and minimal intrusiveness, is not unconstitutional, even when performed by a female officer.") (citing *Timm v. Gunter*, 917 F.2d 1093, 1100 (8th Cir. 1990)). Plaintiff therefore fails to state an Eighth Amendment claim against Defendant Jones.

### D.      Remaining Claims

Plaintiff alleges that all Defendants retaliated and conspired to retaliate against him for filing grievances.  He also alleges that Defendant Marshall discriminated against him in violation of the Equal Protection Clause.  The Court concludes that Plaintiff has alleged sufficient facts to warrant service of those claims on Defendants.  Accordingly, the Court will order service of the complaint on Defendants.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims alleging violations of due process, access to the courts, and the Eighth Amendment will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants.

An Order consistent with this Opinion will be entered.


Dated:  December 15, 2014                              /s/ Gordon J. Quist
                                                                        GORDON J. QUIST
                                                                        UNITED STATES DISTRICT JUDGE