UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. DYKES,

    Plaintiff,

v.

N. MARSHALL, S. JONES,
UNKNOWN MEADOWS, and
D. NORTH,

    Defendants.
                            /

Case No. 1:14-cv-1167

Hon. Gordon J. Quist

# REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the Court on plaintiff's motion for leave to file an amended complaint (docket no. 13), defendants Marshall and Jones' motion for summary judgment based solely on a failure to exhaust (docket no. 15), defendant North's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (docket no. 20), defendant Meadows' "joinder and concurrence" in defendant North's motion to dismiss (docket no. 29)[1] and "Objections" filed by both plaintiff (docket no. 30) and defendant North (docket no. 32).

    **I.**    **Procedural background**

Plaintiff is incarcerated by the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI). He filed a complaint against four employees at RMI: Classification Director N. Marshall; Correctional Officer S. Jones; and Food Service Supervisors (unknown)

---

[1] The Court has construed defendant Meadows' "joinder and concurrence" as a motion to dismiss the complaint on the same grounds as set forth in defendant North's motion.

Meadows and D. North. Compl. (docket no. 1). The Court summarized plaintiff's original complaint as follows:

> Plaintiff's complaint is not a model of clarity, as he initially alleges some of the facts supporting his claims and only later provides a chronology of facts that do not wholly parallel his earlier allegations. The Court has attempted to consolidate the allegations into a single sequence.
>
> Plaintiff alleges that he was employed in a food service job at RMI for approximately ten months, during which time he received no misconduct tickets, no counseled warnings and no negative work reports. He alleges that, before Aramark took over food service delivery at RMI, the food-service department had an informal procedure to request termination of an employee who had been counseled three times for violating food service rules during a period of 30 days.
>
> According to the complaint, Defendants conspired to issue counseled warnings against Plaintiff in order to terminate Plaintiff's employment. Plaintiff alleges that Defendant Jones touched Plaintiff's "private areas" during the course of seventeen pat-down searches, ostensibly in violation of MICH. DEP'T OF CORR., Policy Directive 03.03.140 ¶ D(2). (Compl., docket #1, Page ID##7, 13.) Plaintiff subsequently defines his private areas as his "[b]uttocks, phallus, genit[]als, and inner thighs." (*Id.*, Page ID#12.) Plaintiff also alleges that Defendant Meadows subjected him to discriminatory harassment for not participating in food service conversations, ostensibly in violation of MICH. DEP'T OF CORR., Policy Directive 03.03.130. On April 21, 2014, he informed both Defendant Jones and Defendant Meadows that he was filing the grievances against them for the conduct, and he subsequently filed the grievances.
>
> On April 27, 2014, Defendant Meadows ordered Plaintiff to wash the walls in the pots-and-pans area. Meadows later came up to Plaintiff and asked if he had washed the walls. Plaintiff told Meadows he had, and Meadows, after consulting with Jones, told Plaintiff, "I got you, this is your last day." (Compl., Page ID#10.) Meadows wrote a Class III misconduct ticket against Petitioner for Lying to an Employee, together with a Lay-in Notice and a work report that requested Plaintiff's termination from his position. Plaintiff objected, telling other staff that the camera footage would reveal that Plaintiff had not lied and that he had washed the walls as directed. Upon review of the camera footage, the misconduct ticket was found to be unsubstantiated. Plaintiff filed a grievance against Meadows, who left his job a few days later.
>
> Plaintiff observed Defendant North take a cookie from a cookie sheet and eat it while supervising the food line on May 12, 2014. Plaintiff told supervisor Karr about North's conduct. Plaintiff then informed North that he would be filing a

2

grievance against him for "unsanitary practices." (*Id.*, Page ID#14.) North responded, "I don't care. Hey Dykes. Just spell my name right." (*Id.*) Plaintiff contends that the comment referenced Plaintiff's having mis-spelled Meadows' name on a prior grievance, and it indicated that Defendants were laughing at Plaintiff and conspiring with one another.

Later that day, Plaintiff gave prisoner Robinson a note to deliver to prisoner Johnson. Defendant Jones found the note during a patdown search, and Defendant North asked Plaintiff what it was. Plaintiff explained that it was "a note to Johnson trying to get the coffees he said he would give for a letter I wrote for him[.]" ( *Id.*) North issued Plaintiff a counseled warning, "because there is no passing of anything while on your assignment." (*Id.*) Food-service employee Corter was standing nearby. She told Plaintiff that, "because you weren't caught trying to get the items you haven't violated any rules, consider this your warning, because there is no passing of anything while on your assignment." (*Id.*) Plaintiff states that no rule prohibited the passing of notes, and North's write-up was merely another attempt to have Plaintiff fired from his job. The following day, Plaintiff was informed that he was being laid-in from work, and he was handed a notice on which North had claimed, as follows:

> A) Prisoner Dykes #201541 was counseled by C/O S. Jones in the month of April about doing legal work while on assignment. . . .
>
> B) Dykes-Bey wrote a note for prisoner Robinson #858448 to pass to prisoner Johnson #791359 while on assignment. . . .
>
> C) This is prisoner Dyke's 3rd write-up within 30 days. . . .
>
> D) Prisoner admits in the letter he was charging prisoner Johnson 791359 for legal work he completed and sent to the prosecutor. There are no (CSJ-337) Legal Assistance Agreements that allow for compensation for another prisoner[']s assistance[.] . . .

(*Id.*, Page ID#15.) Plaintiff disputes the reasons given for the counseled warnings. He contends that the first warning was for being argumentative about the rules, not for doing legal work on the job, and he insists that, because there was no rule infraction, Jones was retaliating against him. He also asserts that writing a note to Robinson did not violate a rule. Further, he contends that the note does not suggest to a prudent person that he did any legal work for Johnson, and he claims that Johnson offered to pay him to write a letter to the prosecutor for him. [FN 1] Plaintiff filed a grievance against Defendant North on May 13, 2014.

On June 2, 2014, Defendant Marshall conducted a hearing on Defendant North's request to reclassify Plaintiff. At the hearing, in an effort to prove that the request for reclassification was retaliatory, Plaintiff attempted to provide Marshall

3

with copies of the grievances he had filed against Defendants Jones, Meadows, and North, as well as copies of the kitchen rules and the institutional policies. Defendant Marshall told Plaintiff that she did not need to see his copies, as she was "fully aware of them and aware of the conflict [Plaintiff] was having with staff, [] which is over, because I'm terminating you from you[r] job." (Id., Page ID#16.) Marshall told Plaintiff that he would not work again in food service as long as he was housed at RMI and that she was placing him on "unemployable" status. [FN 2] (*Id.*)

Plaintiff filed a grievance against Defendant Marshall the next day, contending that Marshall was assisting the other Defendants in having Plaintiff terminated from his job assignment without due process. He states that Marshall fabricated the reclassification report by asserting that Plaintiff had been terminated because he had received a misconduct ticket for being out of place, despite the fact that Plaintiff had been misconduct-free for more than a year. When Assistant Resident Unit Supervisor (ARUS) Rogers investigated the grievance, Marshall told Rogers that she had terminated Plaintiff because of the counseled warnings Plaintiff had been issued by the other Defendants. Plaintiff contends that the changing reasons given for the termination, together with the absence of a legitimate reason for the termination, demonstrate that Defendant Marshall acted as part of a conspiracy to retaliate against Plaintiff. He also alleges that his unwarranted placement on unemployable status was both unsupported and retaliatory. He argues that under MDOC Policy Directive 05.01.100, he should be eligible for a new job after 30 days. On July 15, 2014, ARUS Rogers sought reclassification for Plaintiff, and she identified three job pools for placement. Defendant Marshall allegedly refused to process the request for reclassification and, on August 8, 2014, merely marked the form "Review" instead of "Reclassification," which had the effect of keeping Plaintiff on unemployable status for an additional 30 days. ARUS Rogers submitted another reclassification request for Plaintiff on August 20, 2014, after finding that the computer showed the reason given for the reclassification, a misconduct ticket, was not correct. Defendant Marshall again merely marked the request as "Review" and refused to reclassify Plaintiff. Plaintiff argues that the treatment of white prisoners Hill, Moore, Fox, Duranso and Eagle, who were terminated from food service following misconducts but not placed on unemployable status, demonstrates that Defendant Marshall's treatment of Plaintiff violated the Equal Protection Clause and was retaliatory. Plaintiff also contends that Defendant Marshall's conduct violated his right to access the courts, because he will be unable to file a state-court lawsuit until he pays a minimum of $375.00, and he currently owes $2,030.00 to the courts. Plaintiff argues that he has two pending suits, one of which is at the trial stage and the other of which is in the Sixth Circuit. [FN 3]

In sum, Plaintiff alleges that Defendants conspired to violate and violated his First Amendment rights by retaliating against him for filing grievances; denying him due process; denying him access to the courts; denying his right to equal protection;

4

and violating his Eighth Amendment right to be free from pat-down searches that touch his pubic area. For relief, Plaintiff seeks compensatory and punitive damages.

> [FN 1 Plaintiff regularly refers to exhibits attached to his complaint, but the Court has not received exhibits from Plaintiff.]
>
> [FN 2 Under MDOC Policy Directive 05.02.110 ¶ A, all prisoners must be assigned to work and/or school, unless they are classified as "unemployable" under Policy Directive 05.01.100 ¶ X. Unless that status is assigned because of a medical restriction or placement in segregation, the prisoner is not permitted to participate in more leisure time than those who work full time. MICH. DEP'T OF CORR., Policy Directive 05.01.100 ¶ Z. A prisoner's unemployable status is reconsidered for reclassification every 30 calendar days. *Id.* ¶ AA. Moreover, a prisoner who has been "terminated from a work or school assignment for unsatisfactory performance, or as the result of being found guilty of misconduct, within the 12 months preceding application for indigent status" is not eligible for indigent status. MICH. DEP'T OF CORR., Policy Directive 04.02.120 ¶ B(4).]
>
> [FN 3 Plaintiff apparently is referring to *Dykes v. Winn*, No. 2:13-cv-13813 (E.D. Mich.), which remains pending in the Eastern District of Michigan, and *Dykes v. McRoberts*, Case No. 14-1766 (6th Cir.), on appeal from No. 5:13-cv- 13812 (E.D. Mich) (Op. & Order of Dismissal Dec. 19, 2013).]

Opinion at PageID.44-49.

The Court screened the complaint pursuant to the Prison Litigation Reform Act (PLRA), under which the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *See* Opinion (docket no. 5), citing 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). Pursuant to the PLRA, the Court determined that "[p]laintiff's claims alleging violations of due process, access to the courts, and the Eighth Amendment will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)" and that the complaint should be served against

5

defendants with respect to his remaining claims. *Id.* at PageID.57. Accordingly, the Court entered an order dismissing plaintiff's claims for violations of due process, the Eighth Amendment and access to the Courts with prejudice and directing service on defendants with respect to the other claims. *See* Order for partial dismissal and partial service (docket no. 6). Plaintiff disputed this order, but the Court denied his motions to reconsider. *See* Order (docket no. 10).

## II. Plaintiff's motion to amend

Prior to defendants filing their responses to the complaint, plaintiff filed a motion for leave to file an amended complaint. *See* Motion to amend (docket no. 13). Plaintiff's amended complaint is properly before the court pursuant to Fed. R. Civ. P. 15(a)(1), which provides that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Because plaintiff filed his amended complaint within this time frame it was unnecessary for him to file a motion to amend. While it appears to the Court that plaintiff's motion to amend is an attempt to avoid the Court's original screening under the PLRA and the order for partial dismissal, the Court must accept this amended complaint. "The PLRA's screening requirements . . . say nothing about whether a district court can allow a prisoner to amend his complaint." *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). "[W]e hold, like every other circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA." *Id.* Accordingly, plaintiff's motion to amend (docket no. 13) should be denied as moot, but his proposed complaint (docket no. 13-1) accepted under Fed. R. Civ. P. 15(A)(1).

### III. Plaintiff's amended complaint

Plaintiff's amended complaint is now before the Court for screening under the PLRA. The filing of the amended complaint changed the nature of plaintiff's action to include only those allegations as set forth in the amended pleading. "It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). "Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1476, pp. 636-38 (2010). "[W]hen a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward" and "wipes away prior pleadings." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). *See also B & H Medical, L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 268 n. 8 (6th Cir. 2008) ("a prior 'complaint is a nullity, because an amended complaint supercedes all prior complaints'") (*quoting Drake v. City of Detroit*, 2008 WL 482283 at *2 (6th Cir. Feb. 21, 2008); *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) ("Plaintiff's first amended complaint, not his original complaint, was the legally operative complaint . . .") (*citing In re Atlas Van Lines* and *Massey*).

Here, plaintiff's amended complaint was not prepared on the Court's form. As with his original complaint, plaintiff's amended complaint refers to exhibits not attached to the pleading. The amended complaint sets forth three numbered causes of action: 1. "Unreasonable and accessive [sic] force"; 2. "Violation of due process"; and, 3. "Access to the court". *See* Amend. Compl. at PageID.173-179. These are the three causes of action which the Court dismissed from the original

7

complaint. Although plaintiff's amended complaint did not include a separate count for retaliation, he alleged in a separate "statement of claim" that defendant Marshall engaged in "retaliatory actions" by "restricting plaintiff from applying for indigent status, and from obtaining employment higher than $11.00." Amend. Compl. at PageID.180-181. In addition, the amended complaint now claims that defendant Jones' pat downs were unauthorized touchings which violated plaintiff's First and Fourteenth Amendment rights. Finally, unlike his original complaint, plaintiff's amended complaint did not allege an equal protection violation or any claims against defendant Meadows.

Since this action is now based upon plaintiff's amended complaint, the Court will review the sufficiency of the allegations set forth in the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that the court "shall dismiss" actions brought *in forma pauperis* "at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." To determine whether a complaint states a claim on which relief can be granted under § 1915(e)(2)(B)(ii), the court applies the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007). *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted). While the pleading standard under Fed. R. Civ. P. 8 does not require "detailed factual allegations," the rule "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Id.*, citing *Twombly*, 550 U.S. at 555. Both of plaintiff's new claims fail.

### A. Unreasonable and accessive [sic] force

With respect to defendant Jones, plaintiff re-alleged that Jones touched his phallus, groin, inner thighs and buttocks during 17 illegal unauthorized pat downs in violation of MDOC Policy Directive 03.03.140(D)(2) ["Prohibited sexual conduct involving prisoners"]. Amend Compl. at PageID.173-174. These are the same allegations as set forth in the original complaint. For the reasons discussed in the Court's original opinion, this Eighth Amendment claim should be dismissed because it fails to state a cause of action. *See* Opinion at PageID.54-56.

### B. Violation of the First Amendment's free exercise clause

In a new claim, plaintiff alleged that Jones' pat downs violated his "First Amendment right of his religious morals and practices of prohibited practices of homosexuality, defined as the touching of private and personal areas of the same sex." Amend. Compl. at PageID.180. The First Amendment provides in pertinent part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." It is well established that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal citation omitted). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948). This limitation of privileges arises "both from the fact of

incarceration and from valid penological objectives - including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.* citing *Pell v. Procunier*, 417 U.S. 817, 822-23 (1974). Evaluation of penological objectives is committed to the considered judgment of prison administrators who are charged with and trained in the running of the particular institution under examination. *Id.* at 349.

Here, plaintiff alleged that he "has been a Moorish American Moslem since 1991, his religion is Islamism, and his faith is monotheism" and "that his religious beliefs are deeply rooted in the laws of nature, and the practices of homosexuality or the behavior that constitutes homosexuality are unnatural and not permitted." Amend. Compl. at PageID.176. The Sixth Circuit has rejected the claim that a pat-down search violates a prisoner's First Amendment free exercise claims. *See Muhammad v. Bush*, No. 95-1887, 1997 WL 434382 (6th Cir. July 31, 1997) (upholding grant of summary judgment in favor of defendants upon male Muslim inmate's claim that pat-down search by female guards violated his First Amendment rights). *See also*, *Chavis v. United States*, 597 Fed. Appx. 38, 40 (3rd Cir. 2014) (rejecting prisoner's claim "that any contact by an officer with his genital area violates his First Amendment right to free exercise because his religion prohibits him from allowing another male to have contact with his genitalia for any purpose" and observing that "[a] routine pat-down is understood to include a search of the groin area"). Accordingly, plaintiff's First Amendment free exercise claim should be dismissed.

C. **Violation of the Fourth Amendment**

In another new claim, plaintiff alleged Jones's pat downs violated his "Fourth Amendment right to be free from the intrusion of intentional touching of the Plaintiff's private area, which is unlawful and unprofessional." Amend. Compl. at PageID.180. The Court disagrees. A

prisoner has no legitimate expectation of privacy in his cell. *See Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984) ("[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order"). Nor does an inmate have a Fourth Amendment privacy right to avoid being searched. As this Court has previously observed:

> [T]he Sixth Circuit upheld a grant of summary judgment in favor of defendants upon an inmate's Fourth Amendment privacy claim that a body cavity search to retrieve a contraband lighter secreted within her vagina violated her constitutional rights. *Henning v. Sowders*, No. 93-5126, 1994 WL 83259 (6th Cir. May 14, 1994). In addition, in *Roden v. Sowders*, 84 Fed. Appx. 611 (2003), the Sixth Circuit held that the strip search of a male prisoner in the presence of a female officer did not violate the prisoner's rights under the Fourth or Eighth Amendments, despite the fact that the officer allegedly laughed at the prisoner when he was naked. *Id.* at 613.

*Harris v. Caruso*, No. 2:06-CV-198, 2006 WL 2521403 at *9 (W.D. Mich. Aug. 30, 2006). Accordingly, plaintiff's Fourth Amendment claim should be dismissed.

### D. Violation of due process

With respect to defendant North, plaintiff alleged that on May 13, 2014, North asserted false, fabricated claims against him. Amend. Compl. at PageID.177. With respect to defendant Marshall, plaintiff alleged that on June 2, 2014, Marshall asserted a false, fabricated claim against him. *Id.* Plaintiff alleged that he was not provided with an administrative hearing with respect to these claims in violation of his due process rights. *Id.* These are the same allegations as set forth in the original complaint. For the reasons discussed in the Court's original opinion, these due process claims should be dismissed because they fail to state a cause of action. *See* Opinion at PageID.50-51.

### E. Access to the court

Plaintiff alleged that defendant Marshall's act of placing him on unemployable status barred plaintiff from filing for indigent status, and prevented him from sending out unspecified "legal mail." Amend. Compl. at PageID.178-179. These are the same allegations as set forth in the original complaint. For the reasons discussed in the Court's original opinion, this First Amendment access to the court claim should be dismissed because it fails to state a cause of action. *See* Opinion at PageID.51-53.

### F. Defendant Meadows

While the original complaint alleged misconduct by defendant Meadows, the amended complaint does not include any claims against this defendant. Accordingly, defendant Meadows should be dismissed.

### G. Equal protection claim

Similarly, while the original complaint included an equal protection claim, no such claim appears in the amended complaint. Accordingly, this claim should be dismissed.

### H. Retaliation claim

As discussed, the amended complaint re-alleged that defendant Marshall retaliated against plaintiff. Accordingly, this action should proceed on this retaliation claim.

### IV. Dispositive motions and objections

Defendants' dispositive motions (docket nos. 15, 20 and 29) and the parties' "objections" (docket nos. 30 and 32) should be denied as moot because they do not address the claims alleged in the amended complaint. "Because the original complaint has been superseded and nullified, there is no longer a live dispute about the propriety or merit of the claims asserted therein;

therefore, any motion to dismiss such claims is moot." *Glass v. The Kellogg Co.*, 252 F.R.D. 367, 368 (W.D. Mich. 2008). *See, also, Principal Manufacturing Corporation v. Epsey & Associates*, No. 1:08-cv-393, 2009 WL 483901 at *2 (S.D. Ohio Feb. 25, 2009); *LaFountain v. Brevard*, No. 1:08-cv-518, 2009 WL 427245 at *2 (W.D. Mich. Feb. 20, 2009).

### V.     Recommendation

For the reasons set forth above, I respectfully recommend that plaintiff's motion to amend the complaint (docket no. 13) be **DENIED** as moot, but that the proposed amended complaint (docket no. 13-1) be **FILED** as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1).

I further recommend that defendants Marshall and Jones' motion for summary judgment (docket no. 15), defendant North's motion to dismiss (docket no. 20), defendant Meadows' joinder and concurrence in the motion to dismiss (docket no. 29), and the "Objections" filed by both plaintiff (docket no. 30) and defendant North (docket no. 32) be **DENIED** as moot.

I further recommend that all of plaintiff's claims, except for his retaliation claim against defendant Marshall, be **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I further recommend that defendants Jones, Meadows and North be **DISMISSED** and that this action proceed against defendant Marshall on plaintiff's retaliation claim.


Dated:  December 29, 2015            /s/ Ray Kent
                                     RAY KENT
                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).