UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT L. DYKES,

    Plaintiff,

v.

    Case No. 1:14-cv-1167

    Hon. Gordon J. Quist

N. MARSHALL, S. JONES,
UNKNOWN MEADOWS, and
D. NORTH,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendant Jones and Marshall's motion for summary judgment (ECF No. 73).

    **I.    Procedural background**

Plaintiff is incarcerated by the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI). He filed a complaint against four employees at RMI: Classification Director N. Marshall (now Kerr)[1]; Corrections Officer (CO) S. Jones; and Food Service Supervisors (unknown) Meadows and D. North. Compl. (ECF No. 1). The only claims which remain in this action are plaintiff's claim that Classification Director Marshall discriminated against him in violation of the Equal Protection Clause, and that Marshall and CO Jones retaliated against him in

---

[1] The Court notes that the Classification Director, Nancy Kerr, was formerly known as Nancy Marshall. Because she was known as Nancy Marshall during the relevant time period of this lawsuit, I will refer to her as "Ms. Marshall."

violation of the First Amendment. *See* Opinion (ECF No. 5, PageID.57);Memorandum Opinion and Order (ECF No. 42).

Plaintiff's remaining claims are related to his prison work assignment in the RMI food service. Plaintiff alleged he was given counseled warnings which resulted in food service management (former defendant North) requesting that he be terminated from that work assignment. The Lay In Notice submitted to Ms. Marshall gave the following reasons to place plaintiff on lay-in status[2]:

> Prisoner Dykes #201541 was counseled by C/O Jones in the month of April about doing legal work while on assignment.
>
> Dykes-Bey wrote a note for prisoner Robinson #858448 to pass to prisoner Johnson #791359 while on assignment (attached).
>
> This is prisoner Dyke's 3rd write-up within 30 days.
>
> Prisoner admits in the letter he was charging prisoner Johnson 791359 for legal work he completed and sent to the prosecutor.
>
> There are no (CSJ-337) Legal Assistance Agreements that allow for compensation for another prisoners [sic] assistance.

Lay-In Notice (ECF No. 75, PageID.643).

Former Defendant North asked that plaintiff be removed from his prison work assignment because:

> Upon review of P.D. 05.03.116 (L) [sic], prisoner Dykes-Bey by his own admission in attached note is in fact extorting prisoners for doing legal work. ADW's Office is requested to review if there is any approved legal assistance agreement forms on file between Dyke-Bey and Johnson #791359.

*Id*.

---

[2] "While on lay-in status, prisoner will be restricted from leisure-time activities which include Yard, Day Rooms, Microwave Area, Telephones, General Library, Religious Activities, and Recreational Activities." Lay-In Notice (ECF No. 75, PageID.643).

Plaintiff alleged that on June 2, 2014, Ms. Marshall held a reclassification hearing as requested. Compl. at PageID.16. At the hearing, plaintiff brought grievances that he had written on CO Jones and former defendants Meadows and North. *Id*. Ms. Marshall responded, "I don't need to see, I'm fully aware of them and aware of the conflict your [sic] having with staff, of which is over, because I'm terminating you from you[r] job." *Id*. On June 3, 2014, plaintiff "wrote a grievance on N. Marshall for retaliation as it was obvious she was assisting the defendants in their main objective to have me terminated from my job assignment." *Id*. Plaintiff alleges that Ms. Marshall discriminated against him by failing to reclassify him for a new job within 30 days as required by Policy Directive 05.01.100. *Id*. at PageID.16-17. In this regard, Ms. Marshall refused to process a July 15, 2014 reclassification request from ARUS Rogers which was returned to plaintiff as "review" rather than "reclassification," which kept plaintiff on unemployable status. *Id*. at PageID.17. Ms. Marshall also refused to reclassify plaintiff after receiving a reclassification request from ARUS Rogers on August 20, 2014, which noted that the reclassification hearing report incorrectly stated that plaintiff had been issued a misconduct ticket. *Id*. at PageID.17-18. Finally, plaintiff alleged that Ms. Marshall's treatment of white prisoners Hill, Moore, Fox, Duranso and Eagle, who were terminated from food service following misconducts, but not placed on unemployable status, demonstrates that Marshall's treatment of plaintiff violated the Equal Protection Clause and was retaliatory. *Id*. at PageID.20-24. While plaintiff's complaint referred to various exhibits in support of his claim, none were attached to the complaint.

## II.     Defendants' motion for summary judgment

### A.     Legal standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

B.      **Equal protection claim**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 864 (6th Cir. 2012), quoting *City of Cleburne*, 473 U.S. at 439. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer District*, 922 F.2d 332, 341 (6th Cir. 1990) (internal quotation marks omitted).

A plaintiff presenting a race-based equal protection claim under § 1983 can either present direct evidence of discrimination, or can establish a *prima facie* case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Umani v. Michigan Department of Corrections*, 432 Fed. Appx. 453, 458 (6th Cir. 2011). Here, plaintiff does not allege direct evidence of discrimination. To demonstrate a prima facie case of

discrimination, plaintiff must show: (1) that he is a member of a protected group, (2) that he was subject to an adverse decision with respect to his classification for the prison work assignment at the Food Service, (3) that he was qualified for that work assignment, and (4) that he was treated differently than similarly-situated members of the unprotected class. *See id*. at 460. To be "similarly situated" for purposes of alleged discrimination arising from classification decisions and termination from a prison work assignment, the Sixth Circuit uses the analysis applicable to a discrimination claim raised by a non-incarcerated individual who is employed, i.e., "[t]o be a similarly-situated employee, the comparative employee must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." *Id*.

Plaintiff alleged that Ms. Marshall violated his rights under the Equal Protection Clause "when she intentionally treated me differently than she did White Prisoners who were similarly situated." Compl. at PageID.20. In this regard, plaintiff's complaint identified the "similarly situated" white prisoners as follows (in his words):

> A)    The defendant N. Marshall terminated me from my food service job based upon unsupported fabricate claims of food service supervisors, no misconduct, or any legitimate procedural reason; claiming that because of the fabricated claims, I jeopardized the integrity of the job, and so, was being terminated.
>
> B)    As a result of the termination the defendant reclassified me to unemployable status (a requirement I did not meet, as I was on the job for more than six months, neither did I at any time refuse to work), place on room restrictions, restricted from applying for the kitchen (without a due process or legitimate reason), and restricted from applying to indigent.

\*   \*   \*

> Yet when it came to members of her race, who were similarly situated, she treated them differently:
>
> C) There were two white prisoners (Moore and Fox), who were Food Service workers, who were terminated from Food Service because of their over-familiarity with a female Food Service Supervisor, neither were issued Misconducts, but were terminated, and yet, were never reclassified as unemployable, placed on Room Restriction, instead, both were reclassified to other jobs.
>
> D) Prisoner Duranso #154293 (another member of her race), was terminated from Food Service without a Misconduct, for allegedly assaulting a female Food Supervisor, he was never reclassified as unemployable, placed on Room Restriction, but was reclassified to another job as a Recreation worker.
>
> E) Both prisoners Edgley #172968 and Hibdon #2945609 (two more members of her race), were Food Service workers, both received Class One Misconducts and placed in segregation while on their Food Service assignments, one allegedly said some sexual threatening comments to a female Food Service Supervisor, and the other allegedly was caught fighting while on assignment; both, when they returned to the population were reclassified back to Food Service; per Policy Directive 05.01.100(CC), (DD), (J)(4), (5) if a prisoner received a Misconduct on the job and is found guilty, he is to be reclassified and shall not return to the same assignment for 120 days.
>
> The only logical explanation for the preferential treatment is race, which is a violation of my 14th Amendment U.S. Const., as no other reason exist.

Compl. at PageID.20-21.

In her motion, Marshall contends that plaintiff's claim fails because he presented no evidence that other similarly situated prisoners were treated differently on the basis of race. Specifically, "[n]one of the examples Plaintiff raised in his complaint are of prisoners who had been removed from their jobs for attempting to obtain payment from another prisoner for legal work he had performed for that prisoner in violation of prison policy." Defendants' Brief (ECF No. 74, PageID.566). In this regard, Ms. Marshall stated in her affidavit that plaintiff was terminated from

7

his prison work assignment at the MRI Food Services for violation of a policy directive. Marshall Aff. (ECF No. 75, PageID.634).

In a May 13, 2014 evaluation, Food Services requested plaintiff to be laid in pending an investigation into his acts of extorting other prisoners in violation of Policy Directive 05.01.116(L) for accepting and forcing compensation for doing legal work for another prisoner. *Id*. *See* Prisoner Program and Work Assignment Evaluation (ECF No. 75, PageID.640). While the evaluation referred to "Policy Directive 05.01.116(L)" defendants did not provide a copy of it. Ms. Marshall's affidavit did not explain or clarify this reference. *See* Marshall Aff. at PageID.634.[3] In this regard, other portions of the record indicate that the extortion prohibition for performing legal work appears in MDOC Policy Directive 05.03.116 ¶ N. *See infra*.

The Food Service supervisor noted that this was the second time plaintiff had been caught doing legal work, as reflected in a note which CO Jones removed from a prisoner (Robinson) to be delivered to another prisoner (Johnson) on May 12, 2014. *See* Evaluation at PageID.640. The note to prisoner Johnson stated as follows:

> This is Bob. The one who hooked that situation up for you to go to the Prosecutor's Office. I need them (5) bags of coffee A.S.A.P. So look bring a bag at lunch and at dinner (just one bag at a time) and give it to Slim in the dish tank (Whit [sic] Boy Slim). You can do this all the way up to Thrusday [sic]
>
> Remember, (1) bag at lunch, and (1) bag at dinner, everyday until I get my money.
>
> I didn't cross you, I took care of you. Now take care of me.
>
> Dykes-Bey

Confiscated Note (ECF No. 75, PageID.642).

---

[3] The Court notes that this policy directive does not appear on the MDOC's website.

In her affidavit, Ms. Marshall pointed out that Policy Directive 05.03.116 ¶N (Prisoners' Access to the Courts) prohibits prisoners from charging other prisoners for providing legal services stating:

> "To avoid exploitation of prisoners by other prisoners, prisoners are prohibited from directly or indirectly charging or receiving compensation in any form, including money, goods, or services, for providing legal services to, or obtaining legal services from, another prisoner."

Marshall Aff. at PageID.635-636 (quoting the policy directive).

Ms. Marshall also pointed out that plaintiff admitted that he was charging Prisoner Johnson for legal work. *Id*. at PageID.635. After the note was discovered, plaintiff sent a kite to Deputy Skipper in which he attempted to argue that no infraction occurred because while the act reflected in the note was prohibited, the note itself was not prohibited, and that the prohibited exchange did not occur:

> The second write-up was on 5-12-14 by [former defendant] North, who stated "Robinson was found with a note written by Dykes." Again, this is not a rule infraction of any kind. Nowhere in the Rules do it says that a prisoner is prohibited from giving another prisoner a note. Being honest, prisoner Johnson came to me and asked me to write a letter to the Wayne County Prosecutor's Office, and he would give me (5) bags of coffee, I wrote a note asking that he drop (2) bags off a day when he come to chow. Although the contents of the note is prohibited, the act itself was not committed, and so, I cannot be warned about a rule infraction that did not occur, which leaves only, Robinson being found with this note on him which is not a Rule infraction.

Plaintiff's Kite (ECF No. 75, PageID.644-645). Ms. Marshall did not buy this argument, stating "[t]hese actions had the effect of jeopardizing the integrity of the work assignment and Dykes was using his assignment for personal gain." Marshall Aff. at PageID.636. She further stated that "[p]laintiff was terminated from his assignment because he violated prison rules which made him untrustworthy to be in that position." *Id*.

Ms. Marshall also included a copy of a Program Classification Report for plaintiff dated June 2, 2014, which states "Terminate FS. 436 misconduct on assignment" (Program Classification Report (ECF No. 75, PageID.639)) and a copy of her June 2, 2014 memorandum to ARUS Rogers, which stated in part:

> In accordance with P.D. 05.01.100 and RMI O.P.05.100C, the above-named prisoner has refused to participate in or has been terminated from his work assignment and is now placed on Unemployable Status / Room Restriction status starting as of the date of this memo. This status will be indefinite and will be reviewed every thirty calendar days until the prisoner has returned to his work assignment. He will be removed from all work pools and placed on employment restriction during his Unemployable Status. At this time he also becomes ineligible for indigent funds. Also, there may be Major Misconducts written and additional sanctions as decided by the Hearing Officer.

Marshall Memo (June 2, 2014) (ECF No. 75, PageID.638).

Plaintiff's response to Ms. Marshall's motion contains "objections." In his first objection, plaintiff contends that material facts exist with respect to his Equal Protection claim. Response (ECF No. 78, PageID.667-668). In support of his response, plaintiff included a document containing "undisputed material facts declared under penalty of perjury" (ECF No. 78, PageID.671-675). Given Marshall's arguments, the only issue before the Court is whether the white inmates identified by plaintiff were similarly situated to him and treated more leniently. In this document, plaintiff states (in his words):

> 10.   Defendant N. Marshall treated plaintiff differently then she did the white prisoners, (who worked in Food Service, and were terminated) when she reclassified the plaintiff to unemployable status and room restriction when she terminated the plaintiff from Food Service, but the five prisoners before the plaintiff, who were terminated, received misconducts on the job, were not placed on unemployable status or room restrictions, but were reclassified to other jobs, prisoners Edgley #172968 and Hibdon #292609 were reclass back to Food Service after receiving misconducts on assignment, which is against PD  05.01.100 (CC), (DD), (J)(4), (5).

>    11.    The defendants never denied, Fox and Moore were Food Service workers, who were terminated without a misconduct, for allegedly being overfamiliar with a female supervisor, and were reclassify to other jobs, not unemployable status or room restriction; never denied Duranso #154293 was terminated from F/S for a misconduct while on assignment, and was reclass to another job, and not unemployable status or room restriction; never denied Edgley #172968 received a misconduct, and went to segregation, but when returned to population, were returned to F/S, and not placed on unemployable status or room restriction, which is against PD 05.01.100; never denied Hibdon #294609 received a misconduct, and went to segregation, but when returned to population, was returned to F/S, and not placed on unemployable status or room restriction.

Dykes Decl. at PageID.673-674.

The narrow issue before the Court is whether the white prisoners identified by plaintiff were similarly situated to him. Plaintiff has not established this element of his equal protection claim, because plaintiff has failed to show that they engaged in the same conduct as him, i.e., a violation of the extortion prohibition for performing legal work appears in MDOC Policy Directive 05.03.116 ¶ N. *See Umani*, 432 Fed. Appx. at 460. Accordingly, Ms. Marshall should be granted summary judgment on this claim.

Plaintiff's second and third objections related to Ms. Marshall's affidavits. Plaintiff points out that her first affidavit was unsigned, and that her second signed affidavit was filed one day after the dispositive motion deadline. Response at PageID.667-668. Plaintiff's objections are without merit. Defendants filed their motion for summary judgment within the deadline. The Court notes that Ms. Marshall's first affidavit filed in support of the motion was unsigned (ECF No. 74-3, PageID.606), and that defendants filed a supplemental signed affidavit the next day (ECF No. 75). Under these circumstances, neither the motion nor the second (corrected) affidavit should be stricken as untimely.

In his fourth objection, plaintiff disagrees with defense counsel's characterization of certain facts related to his termination. This objection is also without merit. In addressing a motion for summary judgment, the Court looks to the record, not to defense counsel's arguments.

### C.    Retaliation claims

Plaintiff's remaining claims involve alleged retaliation against CO Jones and Ms. Marshall. To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).

#### 1.    CO Jones

It is undisputed that on May 12, 2014, CO Jones intercepted the note written by plaintiff to prisoner Johnson. *See* Jones Aff. (ECF No. 74-2, PageID.574). As discussed, the note demanded that Johnson pay plaintiff five bags of coffee for legal work done by plaintiff, and that such a note violated a policy directive. As discussed, the Lay In Notice from Food Service dated May 13, 2014 referenced that in April 2014, CO Jones had previously counseled plaintiff about doing legal work while on assignment. CO Jones asserts that plaintiff's retaliation claims fails because he did not make the decision to terminate plaintiff from his job assignment. "Under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue - that is, the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity." *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001). Because CO Jones was not a decisionmaker with respect to plaintiff's prison work

assignment classification, his actions are not at issue in this retaliation case. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) ("[s]tatements by nondecisionmakers . . . cannot suffice to satisfy the plaintiff's burden . . . of demonstrating animus"). Accordingly, CO Jones should be granted summary judgment on this claim.

### 2    Ms. Marshall

For her part, Ms. Marshall contends that plaintiff has not established causation with respect to her actions. To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F.3d at 1037. "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Thaddeus-X*, 175 F.3d at 399. "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id*.

In her June 2, 2014 memo, Ms. Marshall noted that plaintiff had been terminated from his assignment and placed on unemployable status. As discussed, this memo was preceded by the Lay In Notice regarding plaintiff's note charging another prisoner for legal work and a request for termination by Food Service. In his declaration, plaintiff contends that Ms. Marshall retaliated against him for the grievances he wrote against CO Jones because: no misconduct was written for the "unsupportive, fabricated claim" of extorting prisoners; no supervisor requested termination as required per Policy Directive 05.01.100 ¶ GG; and Ms. Marshall "asserted a fabercated [sic] claim that the Plaintiff was terminated for a 436 misconduct while on the job." Dykes Decl. at PageID.672-673. Ms. Marshall has provided no reply to plaintiff's response. Neither Ms. Marshall's

13

affidavit nor her cryptic brief provide a clear explanation for the procedure by which plaintiff was reclassified and whether the sanction issued was appropriate. Genuine issues of material fact exist with respect to whether Ms. Marshall had a valid reason to terminate plaintiff from his work assignment and reclassify him to unemployable status. Accordingly, Ms. Marshall's motion for summary judgment should be denied on this claim.

### D.     Qualified Immunity

Finally, both defendants contend that they are entitled to qualified immunity because plaintiff failed to establish a violation of his constitutional rights. Under this affirmative defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, -- U.S. --, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). A qualified-immunity inquiry involves two questions: whether defendants violated a constitutional right and whether that right was clearly established. *Pearson*, 555 U.S. at 232, 129 S.Ct. 808. On summary judgment, the court must analyze these questions after construing the facts in the light most favorable to the party asserting the injury and drawing all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 377, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *see also Ortiz ex rel. Ortiz v. Kazimer*, 811 F.3d 848, 850–51 (6th Cir.2016). These questions may be answered in any order; if either one is answered in the negative, then qualified immunity protects the official from civil damages. *Pearson*, 555 U.S. at 236, 129 S.Ct. 808; *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir.2013).

*Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016). When a defendant raises the issue of qualified immunity on summary judgment, "[t]he ultimate burden of proof is on the plaintiff to show

that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).

As discussed, plaintiff has failed to establish an Equal Protection violation against Ms. Marshall or a First Amendment retaliation claim against CO Jones. Accordingly, defendants' motion should be granted with respect to these two claims. However, genuine issues of material fact exist with respect to whether Ms. Marshall's reclassification was in retaliation for plaintiff's actions. For that reason, Ms. Marshall's motion should be denied with respect to the retaliation claim.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (ECF No. 73) be **GRANTED** as to plaintiff's equal protection claim against defendant Marshall and his retaliation claim against defendant Jones, and **DENIED** as to plaintiff's retaliation claim against defendant Marshall.


Dated: July 21, 2017                         /s/ Ray Kent
                                             RAY KENT
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).